Welcome to the 11th Circuit. You're going to be hearing three cases today, but before we get started, just in case there are any people here who have not gone through the system before, we work on a traffic light system. As you are speaking you will see a green light. When you get down to two minutes, it will turn yellow. That's a sign for you to start realizing you need to start wrapping things up. When the light goes red, it means your time has expired. That is not a time to shift to another topic. That's a time to finish the sentence you're talking about. We may have questions that push you past the red, but that's up entirely to what we decide we want to do. You should feel free to keep speaking if we are continuing to ask you questions. And with all of that, let me call the first case. Richard Skipper v. United States of America, 24-10165. Mr. Shree, when you are ready, you can get started. I do see you have saved some time for rebuttal. Yes, ma'am. May it please the Court, my name is William Shreeve. I represent the appellant Richard Skipper. This case involves a tax refund erroneously issued to the Skippers for the 2013 tax year and whether the IRS could later treat the refund as creating a tax liability for 2013 and collecting that liability by what the IRS calls a common law offset against a later tax refund that the Skippers were actually due for the 2019 tax year. Is the IRS saying that it's a tax liability? It was my understanding the IRS is saying this was a mistake, it's not a tax liability. Their letters to the Skippers say that it was created a tax liability. But they are in the IRS's current position, right? That's correct. So we're in a world now where the IRS, and I think you would agree, this is not a tax liability, this was just a mistake. Correct. And the IRS is attempting to use a common law right of set-off. And you have arguments as to why in an erroneous refund situation they can't do that. Correct. The district court found that the offset was proper and dismissed the Skippers' lawsuit seeking the 2019 refund. The district court was in error and this court should diverse. I'll briefly go through the timeline here of what happened. You should assume that we are familiar, we've read all the briefing and we're familiar with that. So it's your argument, you can shape it as you will, but we do have a familiarity with the facts. Okay. I'll point out just two facts. The Skippers filed their tax return for the 2013 tax year in October 2014. That means that the statute of limitations for any new assessment of the Skippers' 2013 tax liability expired in October 2017. But what was the date that the check was deposited? The check was deposited in September 2018. And so the IRS was trying to exercise the right of set-off within what period of time? Since the check was deposited. Two years. Okay, they were within a two-year period. They were within a two-year period. So does it boil down to the fact that you would concede that the IRS could have filed a lawsuit against your client? Yes. Okay. So it's just you're saying, is there, because we have an IRS, we have the internal revenue code, we have a lot of statutory provisions that talk about what the IRS can and can't do, that you're questioning whether or not there remains a common law right of set-off? Basically yes. And the code and the case law including this court's decision and bills therein. Okay, so what's your best argument for why the IRS does not retain a common law right of set-off in a non-rebate erroneous refund case? The governing law in this circuit is bills therein versus the United States, which involved a non-rebate erroneous refund like this case does. Bills therein establishes two things. Number one, that once a tax liability is paid, no erroneous refund in and of itself, whether a rebate or non-rebate erroneous refund can revive it. So once the assessment is paid, it is extinguished. And that's what occurred with the Skippers 2013 tax liability. It was fully paid, satisfied. Why through bills therein, the statements in that case that you're relying on, why do they apply to the non-rebate erroneous refund? Why is it that bills therein shouldn't be taken to apply only to rebate erroneous refunds? Bills therein was a non-rebate erroneous refund case. And the second thing that it establishes is it says that the proper procedure for the IRS to collect an erroneous refund is either A, sued under Section 7405 for a refund recovery, or B, a new assessment of tax liability, which has the three-year statute of limitations, which had expired. In this case, the IRS did neither one. It never filed a suit for tax refund recovery. It did not make any new assessment of the Skippers 2013 tax liability within three years. The IRS instead implemented this common law offset. And what it, the way that Do you think there is a discuss the common law right to offset? It does not. And it's my understanding that it's the position of the IRS that this really wasn't an issue in the Bilzerian case, because that wasn't really their litigating theory. That wasn't what the court considered. So that's really why this language is here, saying you have these two options. Since then, maybe because of this case, the IRS has changed its position and says now we can pursue this common law right that we have, and that there is nothing in the statute that specifically eliminates this common law right. What's your response to that? The response is that the way the IRS handled this is they sent letters saying we issued this erroneous refund. You now owe taxes for 2013 because of this refund. You have a tax debt. That's the way they treated it. So they treated it as an assessment, a reassessment of the 2013 tax liability, even though the statute of limitations for that had long since expired. Well, I guess actually I appreciate that, because my understanding of the facts was that it was the IRS that had failed to account for the fact that your clients had paid the taxes for those years, and so the distinction between a tax liability, which I understood the IRS didn't take and consider this to be as opposed to a debt owed, is what justified the offset and therefore made it unnecessary to do a reassessment. That is their position. Our contention is that they say this is justified because it was a non-assessable, non-tax debt. We say that's not, first of all, that's not what your letters say, and second, Bilzerian and other cases say that if you act within three years, a non-rebate erroneous refund can be the basis for a new assessment. So they call it non-assessable. The cases say if you do it within three years, it is assessable, and that didn't happen here. So our position is that once that three years expired, they couldn't do anything with the 2013 tax liability, and that when they tried to implement this common law offset, they said you owe taxes for 2013. We're taking your 2019 refund, paying your taxes that you owe for 2013, and that's what they could not do. They said because we paid you back the money you paid in 2013, you owe these taxes. And they said not only that, you now owe another $2,000 in taxes for 2013. So they deducted the skipper's 2013 account, and they did that in 2020 when they implemented this offset. So the position they're taking now is not what their letters say that they were doing. Their letters say we're collecting a tax debt where we have reassessed your 2013 tax liability is in essence what these letters say. I understand your argument, but what I don't understand factually is I know your clients tried to tell the IRS that there was a mistake. They did it three times and all of that. None of those facts make the IRS look good, but in terms of the letters, my understanding of the IRS's argument is they're saying these letters cannot transform, cannot contradict statutorily what's defined, and your argument is essentially that they can. How are these letters themselves able to convert something into a tax liability if that's contrary to statute? We're just reading, taking the letters for what they say. I mean, the IRS says our letters don't mean what they say basically, and we're saying that was the position you took. This is what you did in your internal accounting system. You said this was a tax liability for 2013. Well, I understand the IRS certainly said that in their letters, but even in your complaint, you call the debt a non-rebate erroneous refund, and that's what the IRS is calling it now. So why are we not having the debate about whether or not in the situation involving a non-rebate erroneous refund, the IRS can offset? Bill Zarian says you've got two ways to collect a non-rebate erroneous refund. It involved a non-rebate erroneous refund. It says you can do one of two things, new assessment, suit for recovery. It doesn't say anything about a common law offset. But Judge Kidd said that issue was certainly not before the court. That's true. That's true. So the outcome for your client is he gets to keep all the money? That's correct. That's right. And that money arguably is not the skipper's money. It's the taxpayer's money or the government's money, right? Well, that's one way to look at it, but there are cases... What are the ways in which... The cases that we've cited in our brief, and specifically the district court opinion in Bill Zarian and in O'Brien and in the Seventh Circuit's opinion, say that if the IRS makes a mistake like this, the taxpayer gets a windfall. The fact that they get a windfall does not mean they don't get a windfall. I mean, it's not a legal reason not to let them keep the money. Thank you. I'll reserve my further arguments for rebuttal. Thank you. Thank you. Mr. Jones, you may proceed. So how should we view this? Should we look at what the... First of all, the IRS did a lot of things wrong at the beginning of this. I'm sure you would concede that and have conceded that. What should we do with these letters? Are we talking about tax liability? Are we moving into whether a right of set-off exists for a non-rebate erroneous refund? Right, Your Honor. I'm certainly not here to defend the IRS's mistakes. The IRS did make mistakes. We acknowledge those. However, that does not give the skippers' estates the ability to keep a debt that they themselves admit is not theirs to keep. And I want to discuss the letters because I think and clarify, you know, one, what those letters say and, one, what they actually mean. I think the letters themselves never once mention that this is an unpaid assessment. It simply says that, you know, it simply reflects the IRS's internal accounting of credits and debits on the taxpayer's account. I know it's a little counterintuitive that you're getting a letter from the IRS saying you owe money, but at the same time, they never once mention an unpaid assessment. And they cannot, as Judge Kidd alluded to, transmute a debt for unjust enrichment into an assessable tax debt. The IRS's assessment authority is outlined in Section 6201 of the tax code, and that is limited to taxes, penalties, interest, and other amounts imposed by the tax code. There is nothing, no authority in the tax code for the IRS to assess an amount that is a result of a mistaken payment delivered to taxpayers. So I'm trying to be clear. You're saying that what the process that the skipper, Mr. Skipper is saying, the IRS should have followed was not even available to the IRS? That's correct. This debt is not assessable under the tax code, and I think maybe it's helpful to sort of spell out a framework for what the IRS's collection options are for a rebate refund versus a non-rebate refund. A rebate refund, which is discussed in the briefs, is a result of a substantive determination of the amount of tax that a taxpayer owes, and it allows the IRS, pursuant to Section 6211, the deficiency statute, if it wants to assess that debt, it can follow the deficiency procedures and assess it, and that unlocks the administrative collection tools like liens, levies, to collect that debt. For non-rebate erroneous refunds, it's a simple clerical mistake by the IRS that creates the debt. There's no grounding in the taxpayer's liability. We agree. There's no dispute that the skippers have properly reported the amount of tax due and fully paid their taxes. This debt here is simply because the IRS sent them money by mistake, and because of that mistake, the IRS is constrained in the way it can collect it, in that it can either, from two years from the date the taxpayers deposited, here that was September 2018, the IRS can either exercise its common law right of offset or two, sue the taxpayers under the erroneous refund statute, Section 7405 of the code. The IRS exercised the first option here within that two-year limitations period spelled out. Is there a reason why you wouldn't go with number two? I think, practically, Your Honor, I think if we're forced, if we'd said there's no right of offset, you can only sue, the IRS would then be sending, in this instance, refunding the skippers $400,000-plus and then immediately turning around and suing them for essentially the same amount of money. And that is, you know, if there's nothing in the code or anything that the skippers have pointed to, skippers of states have pointed to, that would abrogate the sort of longstanding common law rights that the government has to set off tax overpayments against undisputed non-tax debts, which is what the IRS did here. This is the more efficient way to recover the money. Certainly, and that's a right that all creditors have, that this common law offset right is equivalent to a suit under Section 7405 to recover an erroneous refund of saying, you know, and again, I note that that statute, Section 7405, the erroneous refund statute is permissive. It says the government may bring a civil action. And there's nothing in that, the text of that statute that, you know, as we note in our briefs, evince any intent to abrogate the common law right of offset. And that's what the government exercised here within that, within the limitations imposed by it, the two-year time limit. You know, if the government had, we're not saying that we can exercise that right for an unlimited period of time. We must act within the strictures of that statute, and the government did that here. What about the fact that the tax code has, contains statutory offset authority when looking at tax debts? What is your best argument that even though in the code you have this offset authority for a certain type of debt that you maintain to have the common law rights of offset? Your Honor, because that statutory right in Section 6402A applies only to assessable tax, you can only set off a tax overpayment against assessable tax liability, other assessable tax liabilities. And here this is not an assessable debt. You know, as I've noted, there's no authority in the tax code for the IRS to pursue an assessment for an unjust enrichment debt by only reason of the IRS making a mistake. And the court, I think the Chattagouay decision out of the Second Circuit, I think, addresses that particular statute in a different context, but made clear that this statute does not abrogate longstanding common law rights of offset that, you know, the government has long held. So your opposing counsel has cited some language that is slightly problematic for the IRS. So what's your response? Right, Your Honor, I think number one, as I think your questioning alluded to, the facts of that case and the legal issues addressed by that case are different than what we have here, number one. And so that additional statement toward the end of the opinion, which the skippers of states have cited to, I think number one is dicta goes beyond the facts of the case at issue in dispute in Bilzerian. For context, the government at that time was arguing that the issuance of a non-rebate erroneous refund, which was what happened in Bilzerian, had the effect of reviving the taxpayer's original tax liability that had been originally assessed so that it could use post-assessment collection procedures outlined in the code to collect that debt from the non-rebate erroneous refund. In the Bilzerian case, that was a notice of federal tax lien. What Bilzerian said and other courts like O'Brien and the Seventh Circuit said is once the tax liability is paid, whether it's assessed or not, that debt is extinguished. In the IRS, you know, it is not revived by a non-rebate erroneous refund. That, I think, is the core holding of Bilzerian, and the IRS is acting consistent with that holding here. We never attempted to try to assess or use post-assessment collection procedures like we did in Bilzerian to collect this non-rebate erroneous refund debt that the skippers undisputably owed. So that is the case. I do think Bilzerian does lay out these two alternatives. You agree that the IRS could have proceeded under Section 7405. It seems very easy to go with something that would require us to infer from our precedent that the IRS still maintains a third avenue that wasn't discussed when it was just these two alternatives. What's your best support for the common law, our reading into, well, our setting this aside to support your view of the common law right of offset? Like, what should we look toward for that? I think the Chataguay case under the Second Circuit, I think, details the history of the government's common law rights. I think it recognized in Supreme Court cases like Muncie Trust, Cherry Cotton Mills, that this has been longstanding, that the government can offset tax overpayments against non-tax debts. And that there is a long-held presumption that statutes that invade the common law are presumed to retain those common law principles unless there is a specific statutory purpose to the contrary that is evident. And that's absent here. I think on your concern about the Bilzerian case, I think the statement at the end, how erroneous refunds can be collected, I think, as we noted in our briefs, is accurate but incomplete. And that it does not distinguish between rebate and non-rebate refunds. And that rebate refunds can be assessed, can be collected by the erroneous refund suit, whereas non-rebate refunds cannot be assessed because there's no authority in the code for the government to do so. And I think a helpful case in this regard is the Page decision out of the Ninth Circuit, that we cite on page 43 of our brief, which kind of dealt with a similar issue, which the Ninth Circuit had a prior case that had language, essentially, that would answer the question in the case before it. And the Ninth Circuit explained that that decision did not foreclose a third theory that the court had never considered before. And it was not constricted to that prior decision. I think the same applies here, where the government in Bilzerian never argued that it could exercise its common law rights of offset that courts in this court have long recognized. Is this process provisions or practices involved in exercising the offset? I mean, in this case, it seems like the notice would have been the letters, but as you know, the content and the meaning of the letters are being disputed. And the estate's version is that based on the letter, if you want to consider that notice, suggests that you should have gone through the 7405 process. So if the letters are not sufficient, what would have been the notice? Or is there a notice that's even involved in this offset process? I'm not sure I'm understanding your question. You're saying notice for the government to exercise its common law rights of offset?  Okay. Because it seems in the reassessment process, there is some notice. And they get an opportunity to debate that a little bit with the IRS. But with the offset, all of a sudden their money is gone. And where is the due process in that? Well, I would maybe dispute maybe the premise a little bit in that the taxpayer is on notice by keeping a $400,000 check that they know is not theirs. And that, you know, the taxpayers in that scenario, in one sense, have a debt owed to the government by their very keeping of a mistaken, erroneous check that got sent to them. So they have the money, especially in this instance, where they tried so many times to give the government back the money. It's the IRS here that made the mistakes. Right. Your position is that notice is possession of the funds? I think that would be sufficient. I think in normal circumstances, the IRS does notify taxpayers of any action taken on their tax accounts as they did here. I don't think there is any, and I can't think of, I'm sorry, Your Honor, think of any cases which have construed notice requirements to be imposed upon the exercise of offset, either statutorily or common law. So I'm just not aware of that being the case. I think we would submit that, you know, sort of notice in terms of due process would be inapplicable here without having really delved into that issue in the briefs in this instance. And I just, to close, I see my time is running low. Emphasize again that the skippers have all long acknowledged that the money that they have received by mistake was not theirs and not theirs to keep, but they decided to keep it anyway. And, you know, the government acted consistently within its common law within the two-year statute of limitations in collecting that undisputed debt, and there's nothing in the code or the case law that requires that the skippers receive a windfall in this instance. And if there are no further questions from the Court, we'd ask that this Court affirm. Thank you. Mr. Schroeder, do you have any comments on rebuttal? Counsel mentioned or said that the letters did not state or did not mention an unpaid assessment. What they say is that as a result of the refund, this is the June 12, 2019 letter, as a result of the refund, the current unpaid balance for the December 31, 2013 tax period is $433,000. So they're saying in their letters that the refund created a tax liability for 2013. Counsel mentioned that the skippers kept this check even though it was not theirs to keep. They kept it anyway. The skippers told the IRS more than once this is not ours and gave it back. And the IRS gave it back anyway. Counsel mentioned that this, excuse me, that Bilzerian does not distinguish between rebate and non-rebate erroneous refunds as far as the two methods by which the government can try to recollect a non-rebate or an erroneous refund. And we submit that that's not a mistake. That's intentional. They didn't distinguish between the two types of refunds and the methods you can use to recover it because they didn't intend to make any distinction between the two. And that both methods are available for a non-rebate erroneous refund, including a new assessment within two years. How can you reassess in a non-rebate erroneous refund case where it's not taxed? They just sent, the IRS just sent your clients a large check. Their taxes were paid. What are they supposed to reassess? Their taxes are paid in full. The cases that we've cited don't really explain that. They just say the government can go back within three years because the refund creates an underpayment of the tax. That's what Rodriguez says and several other cases that we cite in our brief. They say it creates an underpayment for that tax year and that the government can conduct a new assessment or a supplemental assessment. As far as the notice, there was no notice other than the skippers got a letter that said we're keeping your refund to pay what the government said was the skippers unpaid 2013 tax liability. Thank you. Thank you both. We have another case under advisement. The second case should come forward. Bill Lawson, Angie Austin v. Regency Realty.